United States District Court
For the Northern District of California

***E-Filed 3/12/12***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

LEXINGTON INSURANCE COMPANY,

Plaintiff,

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Defendant.

_______________________________________/

No. C 10-4143 RS

**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT**

I. INTRODUCTION

This is an action between two insurers brought to determine their respective liabilities to provide a defense and indemnity in an underlying personal injury action. The accident giving rise to the underlying suit occurred when two individuals were using a truck-mounted crane to unload wood, and a piece of the crane fell off and injured one of them. Plaintiff Lexington Insurance Company provided a commercial general liability policy to the company that owns the truck and crane, and there is no dispute that it has an obligation to defend and indemnify the company. Defendant Travelers Property Company of America, which provided a “Business Auto Coverage” policy for the company’s vehicles, has denied coverage, contending that a policy exclusion applies to injuries arising from the use of the crane. Through discovery in this action, Travelers has developed undisputed evidence sufficient to support application of the policy exclusion, and it

United States District Court
For the Northern District of California

therefore has shown that it has no further obligation to provide a defense or indemnity. The record also shows, however, that at the time Travelers rejected the tender, the facts known to it created a potential for coverage, such that it was obligated to provide a defense until and unless it could conclusively negate that potential. Travelers has also failed to show that its after-acquired evidence of the applicability of the exclusion absolves it from being required to share in the defense costs incurred in the underlying action prior to the time that evidence came to light. Accordingly, the parties' cross-motions for summary judgment will each be denied in part, and granted in part.

## II. BACKGROUND

In March of 2009, Ben Stewart sued O&M Industries in Humboldt Superior Court, alleging that he was injured while he and his son, an O&M employee, were unloading wood at his house the preceding October. The Stewarts were using a motorized crane attached to a flatbed truck owned by O&M when a cylindrical piece of steel fell off the crane and hit Ben Stewart, causing serious head trauma.

Pursuant to commercial general liability insurance it issued to O&M, Lexington has been defending O&M in the Stewart action, which is ongoing. O&M also tendered the action to Travelers, which denied coverage in June of 2009. Travelers' denial letter explained that it had reviewed photographs of the truck and crane involved in the accident and determined that the "Operations exclusion" of its policy applied. As discussed in more detail below, however, applicability of that exclusion turns on whether the vehicle was "*maintained primarily to provide mobility* to [a] permanently mounted . . . crane[]." (Emphasis added.) Traveler's coverage analysis included no discussion of this issue, or of any facts bearing on the purposes for which O&M primarily maintained the truck.

In discovery in this action, Lexington identified four O&M employees as the only witnesses with knowledge of the primary purposes for which the truck was maintained. Travelers deposed all four of those witnesses on August 11, 2011. While one of those witnesses indicated that some small percentage of the time the flatbed portion of the truck is used to haul materials without regard to the presence of the crane, the unequivocal import of the witnesses' testimony was that O&M primarily

utilizes the truck to provide mobility to the crane. When O&M uses the truck for its own purposes, it almost always is because it has a need to use the crane. When O&M rents the truck to others, it includes a crane operator as part of the rental. It is undisputed that the crane is permanently mounted to the truck.

III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker*

*Magazine, Inc.*, 501 U.S. 496 (1991) (*citing Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## IV. DISCUSSION

### A. Coverage under the Travelers policy

Travelers moves for summary judgment in whole, contending that it has no duty to defend or to indemnify O&M in the underlying action, and therefore no liability in this action to Lexington for equitable contribution. Travelers does not dispute that it is obligated to provide coverage to O&M for any "'bodily injury' or 'property damage' . . . caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' Furthermore, Travelers acknowledges that O&M's flatbed truck involved in the accident qualifies as an "auto" within the meaning of the policy. While the definition of "auto" excludes "mobile equipment," there is an exception to the exception, and "[l]and vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered 'autos,'" not "mobile equipment." Therefore, despite the fact that Stewart's injury arose out of the operation of a power crane mounted on the truck, there is no dispute that Travelers would be obligated to defend and indemnify O&M *unless* a policy exclusion applies.

In arguing that it has no duty to defend or indemnify, Travelers relies solely on the "Operations" exclusion, which provides: "This Insurance does not apply to . . . 'Bodily injury' or 'property damage' arising out of the operation of . . . [m]achinery or equipment that is on, attached

to, or part of, a land vehicle that would qualify under the definition of 'mobile equipment' if it were not subject to a compulsory or financial responsibility law . . . ."

In other words, while the flatbed truck is undisputedly a covered auto under the policy such that Travelers would be obligated to provide coverage in the event of ordinary traffic accident involving the truck, accidents arising from use of the crane are excluded, *if and only if* the truck would qualify as "mobile equipment," were it not subject to "a compulsory or financial responsibility law."

The central question in this case, therefore, is whether the flatbed truck meets the policy definition of "mobile equipment," ignoring the part of that definition that ordinarily excludes vehicles subject to "a compulsory or financial responsibility law." That definition includes, "[v]ehicles, whether self-propelled or not, *maintained primarily to provide mobility* to permanently mounted . . . Power cranes." (Emphasis added.) In light of this definition, the parties are in agreement that if the truck was "maintained primarily to provide mobility" to the crane, the exclusion applies.

As noted above, Travelers' letter denying coverage did not discuss any facts relating to how O&M ordinarily used the truck. Although the letter recited the "maintained primarily to provide mobility" phrase, it did not suggest how Travelers believed that language was satisfied. The letter revealed that Travelers had examined photographs of the truck, and the facts alleged by the Stewarts regarding the accident, but there is no indication Travelers had any knowledge regarding how O&M generally used the truck.

As Travelers points out, the primary purpose for which a vehicle is maintained is determined either from the subjective opinion of the insured or from an objective evaluation of how the vehicle is actually used. *See Alpine Ins. Co. v. Planchon*, 72 Cal.App.4th 1316, 1322 (1999). In either case, it is a "factual inquiry." *Id.* Travelers has not explained how, based on the information it had at the time it denied coverage, it possibly could have resolved that factual issue to support a determination that the exclusion applied. Reviewing photographs of the truck would have revealed, at most, that it was *designed* to serve primarily as a means of transport for the crane. As *Alpine* explains, however, the purpose for which a vehicle is designed involves an entirely different type of inquiry. *Id.* To

United States District Court
For the Northern District of California

determine how O&M actually used the truck on a regular basis, Travelers needed to obtain a subjective opinion from O&M and/or objective facts regarding the use of the truck; it could not rely simply on its visual appearance in photographs.[1]

California law is well-settled that an insurer has a "broad duty to defend the insured against third party claims *potentially* within the policy's coverage." *Blue Ridge Ins. Co. v. Jacobson*, 25 Cal.4th 489, 497 (2001) (emphasis added); *see also Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*,78 Cal.App.4th 847, 881 (2000)( "The broad scope of the insurer's duty to defend obliges it to accept the defense of 'a suit which potentially seeks damages within the coverage of the policy . . .'[Citation]." (emphasis in original). Thus, "any doubt as to whether the facts create a duty to defend is resolved in favor of the insured." *Advanced Network, Inc. v. Peerless Ins. Co.*, 190 Cal.App.4th 1054, 1061 (2011) (citations omitted). At the time defense of the underlying action was tendered to Travelers, it had no knowledge as to the primary purpose for which O&M maintained the truck, either from O&M's subjective viewpoint, or based on objective facts as to how the truck was actually used. Accordingly, there was a possibility that the exclusion would not be applicable, and until and unless Travelers could develop facts showing otherwise, had a duty to provide a defense. *See Vann v. Travelers Companies*, 39 Cal.App.4th 1610, 1614 (1995) ("when a suit against an insured alleges a claim that 'potentially' or even 'possibly' could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate, by reference to 'undisputed facts' that the claim cannot be covered.").

[1] While it might have been reasonable to infer from the photographs that the truck was better suited for providing mobility for the crane than for other purposes, that would fall far short of establishing how the truck was typically used by O&M. For all that Travelers actually knew, O&M had not used the crane itself for quite some time—which could explain why a part of it fell off when the Stewarts tried to use it—but continued to use as an extra vehicle to transport people and materials, despite the inefficiency in doing so.

United States District Court
For the Northern District of California

B. Termination of Travelers' duty to defend

While, as discussed above, evaluation of whether the truck was "maintained primarily to provide mobility" to the crane required a factual inquiry, it does not follow that there remains a material issue of disputed fact at this juncture. The testimony of O&M witnesses obtained on August 11, 2011, conclusively establishes that, whether viewed from the subjective perspective of O&M, or from an objective evaluation of how the truck was actually used, its primary purpose was to provide mobility to the crane. The mere fact that the flatbed of the truck *could* be used to transport other materials, and testimony that it was occasionally utilized in that manner, does not undermine the conclusion that it was *primarily* used as transport for the crane. Lexington has pointed to no contrary evidence, nor has it suggested that other witnesses or facts might exist which could create a conflict.[2] Accordingly, Travelers has shown based on undisputed facts that its duty to defend terminated as of August 11, 2011, and that it has no duty to indemnify.[3]

C. Availability of contribution

Travelers insists that even if it had an obligation to O&M to provide a defense prior to August 11, 2011, that does not give Lexington a right to seek equitable contribution, given that ultimately there is no coverage under the Travelers policy. Travelers relies on cases explaining that

---

[2] The parties engaged in discovery motion practice regarding the adequacy of Lexington's responses to interrogatories seeking any facts regarding the primary purposes for which the truck was maintained. Lexington's basic position in those proceedings was that there was an *absence* of information on that subject, and that it therefore could not be compelled to produce further responses.

[3] At oral argument, Lexington noted that the term "maintained" is not defined in the Travelers' policy, and argued that there is a question as to whether the truck was properly "maintained" at all, in light of the fact that the crane apparently experienced some type of mechanical failure in the accident. Lexington is suggesting there is an ambiguity as to whether the policy uses the term "maintained" in the sense of "kept in good mechanical repair and operating condition." Although "maintenance" of vehicles frequently has such a meaning in other contexts, it would be manifestly unreasonable to construe it in such a sense here, where the plain meaning of the phrase is that the insured merely owns, leases, possesses, or "keeps" the vehicle for a primary purpose, regardless of whether or not the vehicle is well "maintained" through regular servicing and repairs. Lexington's argument is premised on creating an ambiguity where none exists.

equitable contribution rests on fundamentally different principles from those governing an insurers' duties to its own insured. *See, e.g., Centennial Ins. Co. v. United States Fire Ins. Co*., 88 Cal.App.4th 105, 115 (2001) ("Although insurers must respond in full to a contractual policy holder's tender of defense, their respective obligations for contribution to other *insurers* for the costs of defense are entirely separate from their obligations to their insured and are adjusted equitably on the basis of all the circumstances of the case.").

Travelers contends that without a duty to indemnify O&M, it cannot be forced through equitable principles to share in even those defense costs incurred prior to the time that its duty to defend terminated. None of the cases on which Travelers relies, however, so hold. *See Centennial*, 88 Cal.App.4th at 117 (affirming allocation of defense costs among three insurers, all of whom undisputedly issued policies providing coverage, although for different time periods); *United Pacific Ins. Co. v. Hanover Ins*. Co. 217 Cal.App.3d 925, 933-37 (1990) (affirming trial court's decision to leave undisturbed arbitrator's apportionment of defense and indemnity costs among three insurers, where *none* of the policies actually provided coverage for the loss); *Safeco Ins. Co. of America v. Sup. Ct.* 140 Cal.App.4th 874, 881 (2006) (holding that an insurer may defend against a claim for equitable contribution to *indemnity* costs by proving lack of actual coverage). Indeed, *Safeco* suggests the law is precisely the opposite of what Travelers contends here, in that it noted, "[t]he parties agree that a settling insurer seeking equitable contribution from a nonparticipating coinsurer need only establish a *potential for coverage* under the recalcitrant coinsurer's policy <u>in order to obtain contribution for the costs of defense</u> . . . ." *Id.* at 879 (italics in original, underscoring added).

Lexington, in turn relies on *USF Ins. Co. v. Clarendon Am. Ins. Co*., 452 F.Supp.2d 972 (C.D. Cal. 2006), which, although not controlling precedent, is on point and persuasive. In *Clarendon*, the court first determined that the defendant insurers had no duty to *indemnify* the insured in an underlying action, because the damage had not occurred during the relevant time period. *Id*. at 991. The court went on, however, to conclude that defendants had been obligated under the broader duty to defend. *Id.* at 992-99. Accordingly, the court then found that defendants were liable under equitable contribution principles to share in the costs of defense, even though they

were not liable for contribution to the settlement of the underlying action. *Id.* at 1004. The same basic result is appropriate here.

IV. CONCLUSION

The parties' cross-motions for summary judgment are granted in part and denied in part as follows:

1. Travelers is entitled to judgment that it has no duty to indemnify O&M in the underlying action or to contribute to any settlement or judgment in that action, and that its duty to provide a defense terminated on August 11, 2011.

2. Lexington is entitled to equitable contribution from Travelers of defense costs incurred in the underlying action prior to August 11, 2011.

3. Remaining to be decided is the amount of defense costs to be apportioned, and the basis of such apportionment.

The parties shall appear for a further Case Management Conference at 10:00 a.m. on April 19, 2012, with a joint Case Management Conference Statement to be submitted one week in advance.

IT IS SO ORDERED.

Dated: 3/9/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE